## Reasons for Granting the Petition

Petitioner Leland recognizes that under the Judiciary Act of 1925, a writ of certiorari is not regarded as a matter of right, but an exercise of judicial discretion granted under compelling circumstances. This case highlights three questions of constitutional law that are of foundational national importance: (1) Whether it is constitutional to invoke *stare decisis* as though it had any binding power, (2) Whether administrative classifications, prosecutorial discretion or any other power may justly reframe a contest in such a manner as to deny the defendant any of his rights, including the right to a jury trial, and (3) Whether any government, state or federal, not acting within its enumerated powers of regulation or taxation, is constitutionally justified in mandating the purchase of securities or other items. Key discrepancies between the State's interpretation of these principles and those held by this Court enjoin the use of supervisory intervention. The extreme quandaries posed to this Court are expanded in the following sections:

**I. Is *Stare Decisis* Binding?**

In *Ramos v. Louisiana*, 590 U.S. 83 (2020), this Court held:

> *"stare decisis* has never been treated as "an inexorable command." And the doctrine is "at its weakest when we interpret the Constitution" because a mistaken judicial interpretation of that supreme law is often "practically impossible" to correct through other means."

This position directly conflicts with that held by the Utah Court of Appeals[1], ultimately citing in part this Court's opinion for its justification, that:

> "Leland asks us to overrule […] precedent arguing the precedent does not equal constitutionality. However, both this court and the district courts are "bound by vertical stare decisis to 'follow strictly' the decisions rendered by the Utah Supreme Court." *Ortega v. Ridgewood Estates* LLC, 2016 UT App 131, ¶ 30, 379 P.3d 18"

It also conflicts with the District Court's summary judgment[2], echoing that:

"as a Judge I am required to follow the precedent set in front of me".

That the opinions of this Court and State Courts are therefore perceived to be instruments of *will* and are enacted through an alleged binding *force*, is a fact that cannot be mitigated by any argument. Deepening the quandary, this Court's own past opinions have been cited as the alleged source of this binding force, creating a crisis of authority. Which precedent should prevail? The precedent that asserts that stare decisis cannot be binding, or the precedent that insists that it is?

Is a binding injunction to "follow strictly" meaningfully different from an inexorable command? Is the sole distinction to be made in the question of the application of force? If strictness is exhorted, what mechanism exists or should exist to enforce it? A deeper examination of the Utah Court of Appeals' justification from *State v. Menzies* 889 P.2d 393 (1994) reveals the following nuance:

> "We note that the doctrine of stare decisis, as it applies to a court of appeals, has two facets. **Vertical stare decisis**, the first of these two facets, **compels** a court to **follow strictly** the decisions rendered by a higher court. *See*

---

[1] See Order of Affirmance, UT Court of Appeals, Case No. 20230223-CA
[2] See American Fork City v. Seth Stewart, Case No. 225103721 TC, p.67

*Jaffree v. Board of School Comm'rs*, 459 U.S. 1314, 1316, 103 S.Ct. 842, 843, 74 L.Ed.2d 924 (Powell, Circuit Justice 1983); *In re Marriage of Thorlin*, 155 Ariz. 357, 362, 746 P.2d 929, 934 (Ct.App. 1987). Under this mandate, lower courts are **obliged** to follow the holding of a higher court, as well as any "**judicial dicta**" that may be announced by the higher court. *See Lewis v. Sava*, 602 F. Supp. 571, 573 (D.C.N.Y. 1984); *Fogerty v. State*, 187 Cal.App.3d 224, 231 Cal.Rptr. 810, 815 (1986); *Ex parte Harrison*, 741 S.W.2d 607, 608-09 (Tex.Ct.App. 1987). *See generally* Robert E. Keeton, *Venturing To Do Justice: Reforming Private Law* 25-38 (1969); 21 C.J.S. *Courts* § 142, at 169-70 (1990). **Horizontal stare decisis**, the second facet, requires that a court of appeals follow its own prior decisions. This doctrine applies with equal force to courts comprised of multiple panels, requiring each panel to observe the prior decisions of another. *State v. Thurman*, 846 P.2d 1256, 1269 (Utah 1993). Horizontal stare decisis does not, however, require that a panel adhere to its own or another panel's prior decisions with the same inflexibility as does vertical stare decisis. *See Opsal v. United Servs. Auto Ass'n*, 2 Cal.App.4th 1197, 10 Cal.Rptr.2d 352, 356 (1991); *State v. Dungan*, 149 Ariz. 357, 361, 718 P.2d 1010, 1014 (1986). Instead, although it may not do so lightly, a panel may overrule its own or another panel's decision where "the decision is clearly erroneous or conditions have changed so as to render the prior decision inapplicable." *Dungan*, 149 Ariz. at 361, 718 P.2d at 1014." (bold emphasis added)

The first citation above, *Jaffree v. Board of School Comm'rs*, 459 U.S. states:

"What is a court to do when faced with a direct challenge to settled precedent? In most types of cases "it is more important that the applicable rule of law be settled than that it be settled right." *Burnet v. Coronado Oil Gas Co.,* 285 U.S. 393, 406, 52 S.Ct. 443, 447, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting). This general rule holds even where the court is persuaded that it has made a serious error of interpretation in cases involving a statute. However, in cases involving the federal constitution, where correction through legislative action is practically impossible, a court should be willing to examine earlier precedent and to overrule it if the court is persuaded that the earlier precedent was wrongly decided. *Id.* at 407, 52 S.Ct. at 447. "A judge looking at a constitutional decision may have compulsions to reverse past history and accept what was once written. But he remembers above all else that **it is the Constitution which he swore to support and defend, not the gloss which his predecessors may have put on it**." Douglas, *Stare Decisis,* 49 Colum.L.Rev. 735, 736 (1949)." (bold emphasis added)

If being settled were more important than correctness, then of what use is any

appeal to the Constitution on any question already settled contrary to it?

Again peeling back the layers to *Burnet v. Coronado Oil Gas Co*, the quoted Justice Brandeis on that occasion wrote a dissenting opinion (the Court was divided 5-4). Within that opinion he noted (pp. 406-413):

> "Stare decisis is not, like the rule of res judicata, universal inexorable command. "The rule of stare decisis, though one tending to consistency and uniformity of decision, is not inflexible. Whether it shall be followed or departed from is a question entirely within the discretion of the court, which is again called upon to consider a question once decided." *Hertz v. Woodman*, 218 U. S. 205, 218 U. S. 212. Stare decisis is usually the wise policy, because, in most matters, it is more important that the applicable rule of law be settled than that it be settled right. Compare National Bank v. Whitney, 103 U. S. 99, 103 U. S. 102. This is commonly true even where the error is a matter of serious concern, provided correction can be had by legislation. But in cases involving the Federal Constitution, where correction through legislative action is practically impossible, this court has often overruled its earlier decisions. The court bows to the lessons of experience and the force of better reasoning, recognizing that the process of trial and error, so fruitful in the physical sciences, is appropriate also in the judicial function. Compare 281 *U. S. S. 409 Co. v. Hill*, 281 U. S. 673, 281 U. S. 681. Recently, it overruled several leading cases when it concluded that the states should not have been permitted to exercise powers of taxation which it had theretofore repeatedly sanctioned. In cases involving the Federal Constitution, the position of this court is unlike that of the highest court of England, where the policy of stare decisis was formulated and is strictly applied to all classes of cases. […] After such opinions, judicially delivered, I had supposed that question to be settled so far as any question upon the construction of the Constitution ought to be regarded as closed by the decision of this Court. I do not, however, object to the revision of it, and am quite willing that it be regarded hereafter as the law of this Court that its opinion upon the construction of the Constitution is always open to discussion when it is supposed to have been founded in error, and that its judicial authority should hereafter depend altogether on the force of the reasoning by which it is supported. […] With as full respect for the authority of former decisions, as belongs, from teaching and habit, to judges trained in the common law system of jurisprudence, we think that there may be questions touching the powers of legislative bodies which can never be finally closed by the decisions of a court. […] It is more important that the court should be right upon later and more elaborate consideration of the cases than consistent with previous declarations. Those doctrines only will eventually stand which bear the strictest examination and the test of experience."

Justice Stone also gave a dissenting opinion:

> "It is plain that, if we place emphasis on the orderly administration of justice, rather than on a blind adherence to conflicting precedents, the *Gillespie* case must be overruled. […] No interest which could be subserved by so rigid an application of *stare decisis* is superior to that of a system of justice based on a considered and consistent application of the Constitution of the United States." (Ibid., Page 285 U.S. 405)

It is notable that both of these dissenting opinions, including the one cited to *affirm* stare decisis, in reality strongly oppose its rigid application, enjoin its suspension particularly in federal Constitutional matters, and open wide the door to future wisdom and experience to remedy past decisions, always with a view to correction. The Petitioner agrees that wisdom ought to be preferred above habit, and that "It is more important that the court should be right upon later and more elaborate consideration of the cases than consistent with previous declarations." (Ibid., Page 28 U.S. 413)

With respect to horizontal stare decisis, it appears in great measure to reduce to the assertion that to prevail against the argument of any supposed wisdom of the past, a greater wisdom in the present is required. For seasoned judges more amply informed by such trial and error than any of their predecessors, this should pose no indomitable obstacle. Hence *stare decisis* may be of no weight beyond its persuasive power in the face of cumulative wisdom, and when experience has risen to extensive levels, reversals of some past beliefs are almost invariably to be expected. Even with the expounding that *stare decisis* may be "usually the wise policy", it cannot be found to express support for the idea that horizontal stare decisis is irresistible.

*Hutto v. Davis,* 454 U.S. 370 (1982) does directly affirm the notion of vertical stare decisis:

> "unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be."

A similar doctrine is reiterated in *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477 (1989):

> "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."

Such a view explicitly imposes the **will** of a court outside of cases delivered to its jurisdiction and appears to condone the use of **force** in its application.

In his recent concurring opinion in *Gamble v. United States*, No. 17-646, 587 U.S. 678 (2019), Justice Thomas wrote:

> "In my view, the Court's typical formulation of the *stare decisis* standard does not comport with our judicial duty under Article III because it elevates demonstrably erroneous decisions—meaning decisions outside the realm of permissible interpretation—over the text of the Constitution and other duly enacted federal law. It is always "tempting for judges to confuse our own preferences with the requirements of the law," Obergefell v. Hodges, 576 U. S. \_\_\_, \_\_\_ (2015) (ROBERTS, C. J., dissenting) (slip op., at 3), and the Court's stare decisis doctrine exacerbates that temptation by giving the venire of respectability to our continued application of demonstrably incorrect precedents. By applying demonstrably erroneous precedent instead of the relevant law's text—as the Court is particularly prone to do when expanding federal power or crafting new individual rights—**the Court exercises "force" and "will," two attributes the People did not give it**. The Federalist No. 78, p. 465 (C. Rossiter ed. 1961) (capitalization omitted). We should restore our stare decisis jurisprudence to ensure that we exercise "mer[e] judgment," ibid., which can be achieved through adherence to the correct, original meaning of the laws we are charged with applying." (bold emphasis added).

Are we to understand that when judges undertake to cover a proceeding under the heading of allegedly binding "stare decisis", they are not acting as judges at all, but are rather punting on judgment without permitting due examination to take place, and are acting in a capacity as mere perfunctory administrators of **force** and **will**, without a meaningful check on such power? Would this not violate the clear charter of judicial office? If the assertion is rather that they are unbound, and are only taking advice from precedent, then ought not their judgments to reflect such opinion only, rather than citing a supposedly binding cause?

It may be argued that vertical stare decisis may be in part inferred from the appellate structure of the judiciary itself: That is, if a lower court rules a certain way, then on appeal, a higher court may overturn the lower court's decision. That such a decision may be of "force" is true in a sense, however its purview is limited solely to the case at hand rather than constituting a sweeping pronouncement to be obeyed in all cases that appear similar. Moreover, **it is *only* true that such a vertical effect takes place *if* a court chooses to affirm a conviction in a criminal case, thereby giving possible cause for an appeal, or if a party to a civil case wishes further appeal after a lower court's decision is rendered**. If the lower court rules acceptably or with greater clemency, no appeal is necessary, and hence no pushback from a higher court would be warranted. Hence lower courts by design in the appellate structure necessarily have latitude to ignore the likely opinions of higher courts when erring (if error it is to be called) on the side of fairness, of maximizing defendant rights and upholding the Constitution over

precedent. This is in fact desirable. It could even have the benefit of reducing the caseload for the higher courts, since fewer causes for appeal from such decisions would issue. This phenomenon is worlds apart from proactive edicts from higher courts, prescribing how lower courts ought to function, as it behaves quite differently from such a policy. Hence the appellate structure of the judiciary in fact does not affirm a notion of binding stare decisis in matters potentially contravening Constitutional rights. This is also consonant with the federal rule of Individual and State rights having supremacy over federal powers, save for its enumerated few (9th and 10th Amendments, United States Constitution). By the appellate structure itself, higher courts may *guide* lower courts by offering their published opinions as *advice*, but cannot bind them.

In any event, if any support for preemptive, vertical *stare decisis* or binding precedent in general is to be found, it would be circular to cite precedent as the justification for it. Such precedent must be chased to its uttermost root, and if the doctrine be merely advice, then it deserves to be cited as such rather than as a controlling or forceful provision, or a matter of legislation in itself. If on the other hand, it be a binding Constitutional authority, citation to the Constitution itself without reliance on such a thing as "precedent" would be required to demonstrate it.

Attempts in this direction have certainly been made. Chief Justice Marshall, cited in *Cooper v. Aaron*, 358 U.S. 1 (1958), has been interpreted as follows:

> "Article VI of the Constitution makes the Constitution the "supreme Law of the Land." In 1803, Chief Justice Marshall, speaking for a unanimous Court, referring to the Constitution as "the fundamental and paramount law of the

nation," declared in the notable case of <u>Marbury v. Madison</u>, 1 Cranch 137, <u>5 U. S. 177</u>, that "It is emphatically the province and duty of the judicial department to say what the law is." This decision declared the basic principle that the federal judiciary is supreme in the exposition of the law of the Constitution, and that principle has ever since been respected by this Court and the Country as a permanent and indispensable feature of our constitutional system. It follows that the interpretation of the Fourteenth Amendment enunciated by this Court in the *Brown* case is the supreme law of the land, and Art. VI of the Constitution makes it of binding effect on the States "any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Every state legislator and executive and judicial officer is solemnly committed by oath taken pursuant to Art. VI, cl. 3 "to support this Constitution." Chief Justice Taney, speaking for a unanimous Court in 1859, said that this requirement reflected the framers' anxiety to preserve it [the Constitution] in full force, in all its powers, and to guard against resistance to or evasion of its authority, on the part of a State.'"

Where is the reliance on Constitutional authority here, without further reliance on a judicial interpretation previously made? Careless application of this opinion would more than suggest that the Supreme Court's opinions are themselves the supreme law of the land, pursuant to Article VI. This suggestion is of course beyond problematic, as the precedent itself contains numerous contradictions. The text of Article VI clause 3 of the US Constitution is as follows:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

Notably it requires that the Judges themselves shall be bound by said supreme law, in every state, no matter if it is contradicted by the Constitution or laws of said state. Quoting Justice Marshall again:

> "If the legislatures of the several States may, at will, annul the judgments of the courts of the United States, and destroy the rights acquired under those judgments, the Constitution itself becomes a solemn mockery, and the nation

is deprived of the means of enforcing its laws by the instrumentality of its own tribunals." (*United States v. Peters*, 9 U.S. 115 (1809))

We might as well ask, if a higher court or a lower court or any other court or legislature or public officer is found denying **the right to a jury trial**, is that not more of a solemn mockery of the Constitution than to disagree, including in the discharge of one's duties of office, with a panel of Supreme Court justices? Or would it not be a mockery of it to insist that a judiciary is capable of enforcing, or of legislating? Where is the meaningful check if such is held to be the case? Is what is Constitutional a function of what is fashionable in the Supreme Court, or is it the express right of everyone to exercise his conscience in upholding his oath or affirmation of office or of citizenship to sustain the Constitution, free from the force or will of an appellate judiciary, or any judiciary? Can his rights be curtailed owing to a suit in which he was not summoned to appear as a party?

It appears that any ounce of precedent deemed for any practical purpose to be "binding" flies in the face of the charter of the judiciary itself—that the judiciary "has no influence over either the sword or the purse; no direction either of the strength or of the wealth of the society; and can take no active resolution whatever. It may truly be said to have neither FORCE nor WILL, but merely judgment" (Federalist No. 78). "No active resolution" precludes and forever forbids legislating from the bench or enforcing an umbrella rule on others.

If we were to enforce blindly the interpretation of *Hutto v. Davis* that *"the Court of Appeals ignored the hierarchy of the federal court system created by the Constitution and Congress"*, lower courts could not exercise discretion even in

matters of constitutional right, exposing them to malfeasance suits for having acted in violation of their oath of office to sustain the Constitution. Clearly this cannot be correct. The insinuation that "anarchy" would prevail if lower courts held power to disagree with higher courts is suspect given the Constitutional reins themselves. Even more so is this the case when we consider that it never was a judge's prerogative to decide upon a criminal verdict in the first case: It has always been the exclusive purview of the jury to issue such.

The Constitution itself grants nullification powers to a jury. It was never the purview of the judicial department to issue verdicts in any criminal case; that has always been the exclusive role of the jury. The very meaning of the word "judge" derives from Latin *jus- dicere*, meaning "to say the law", whereas "verdict" means "true saying". *Juror* means one having made an oath. Hence the juror is bound by oath to speak the truth. Truth and law are meant to mingle in this setting, but of the two, truth alone is to have any binding power at all to consent to punish the accused, acting as the final check against the abuse of the rule of law by resorting to the preeminent domain of **conscience**, which trumps all others. Is the actual supreme law of the land and its inexorable command of due process "anarchy"?

Hence the question, Is *stare decisis* ever preemptively binding, or can it only be regarded as potentially *helpful advice*? If it is binding, can it be sourced to the Constitution and reconciled with other Constitutional provisions without injury? A multitude of further compelling citations could issue, but the Petitioner considers that the quandary has been adequately demonstrated given the available space.